**W. W. CARUTH, Jr. and First National Bank in Dallas, Trustees, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 76–1654.**

United States Court of Appeals, Fifth Circuit.

Jan. 26, 1978.

Michael P. Carnes, U. S. Atty., Fort Worth, Tex., Martha Joe Stroud, Dallas, Tex., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Act. Chief, App. Section, U. S. Dept. of Justice, Washington, D. C., Jonathan S. Cohen, Atty., Richard Farber, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Vester T. Hughes, Jr., William D. Jordan, Sam J. Dealey, Dallas, Tex., for plaintiffs-appellees.

Before TUTTLE, COLEMAN and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by the Government from a judgment in the trial court, sitting without a jury, in a tax refund suit. The only issue between the parties is the proper

tax treatment of sales of real estate partly for cash and partly for promissory notes. More specifically, the question before us is the method of valuing the promissory notes received at the sale. Because substantial cash payments were made in connection with the sale, no installment sale problem is involved in this case.

The facts are not in dispute. The plaintiffs are trustees of six trusts created for the benefit of the six grandchildren of Mrs. W. W. Caruth. In 1967, the six trusts contracted with Lincoln Property Company XIX, Ltd. (LPC) a Texas limited partnership, as purchaser for the sale of acreage in Dallas, Texas. LPC had two general partners. The six trusts were limited partners. Under the contract of sale, the gross sales price was $43,560 per acre, which was paid by $20,000 per acre in cash and $23,560 per acre in non-interest bearing notes. A total of 33.151 acres of land was sold to LPC, for which the trusts received $663,020 cash and $781,037.56 in notes.

The notes were executed by LPC. The first note was made payable

[w]ithout interest . . . on or before May 7, 1984, provided, however, that the principal sum of this note shall be reduced in an amount equal to each distribution by the aforesaid Limited Partnership to the original Limited Partners, their successors and assigns, of net cash flow (as that term is defined in the Agreement of August 28, 1967, creating the aforesaid Limited Partnership), which the said original Limited Partners, their successors and assigns, are entitled to receive under the aforesaid Agreement creating said Limited Partnership.

Under the limited partnership agreement the trusts were entitled to receive the net cash flow from LPC. This amount, under the contract of sale, was to be credited to the earliest outstanding note and then to successive outstanding notes according to the date of their issue. Altogether, sixteen notes have been issued for a total of $3,236,563.75, and distributions paid on the notes total $307,614.53. This case concerns the proper tax treatment of the sales involving these notes.

The basic dispute between the parties here arises from the fact that these promissory notes do not bear interest, which causes the taxpayers to claim that the notes should be valued under the terms of sections 483(a), (b) and (c), Internal Revenue Code of 1954. The Government argues that those sections provide for the valuation of deferred payments only if the notes are "definite" as to time, amount and liability, but that if the payments are "indefinite" as to time, liability, or amount, the provisions of section 483(d) apply. This section, while still treating the transaction as having been "closed" at the time of sale, provides:

> In the case of a contract for the sale or exchange of property under which the liability for, or the amount or due date of, any portion of a payment cannot be determined at the time of the sale or exchange, this section shall be separately applied to such portion as if it (and any amount of interest attributable to such portion) were the only payments due under the contract; and such determinations of liability, amount, and due date shall be made at the time payment of such portion is made.

26 U.S.C. § 483(d).

Stated more simply, the taxpayers contend that at the time the transaction is closed, they should report for tax purposes the excess of the cash received and the "present value" of the promissory notes over their basis in the property, such "value" to be ascertained by reference to a tabular schedule provided in the applicable regulations. On the other hand, the Government contends that rather than being taken at such tabular value, the notes are to be actually valued in accordance with the general terms of sections 1001(a) and (b) of the Code. Section 1001 provides that the gain from the sale of property equals the excess of the amount realized over the taxpayer's adjusted basis in the property sold. The "amount realized" from the sale is defined in section 1001(b) as the cash received plus the "fair market value" of any property received. The dispute therefore is whether the notes here were to be valued by ascertaining the rate of discount

provided by the regulations or by ascertaining the fair market value of the notes. The parties and the trial court all agree that the resolution of this question depends upon whether these notes are "definite" or "indefinite" obligations of the purchaser.

There is a further contention by the taxpayers that, even assuming the Government's characterization of the notes as indefinite is correct, "fair market value" in the context of this case is the equivalent of "present value" as prescribed by regulations.

■ We think it unnecessary to detail the mechanics of computing the differences that would result from applying the two opposing methods of valuation. These questions are not in dispute. Presumably, the taxpayers would enjoy some tax benefits if they should prevail, although in their brief they state that if the notes are "indefinite" and if their market value must be determined without regard to section 483, as contended by the Government, "a more difficult process of taxation must be employed which will not necessarily yield more revenue to the Government." We, of course, do not concern ourselves with the question of who wins and who loses in our effort to construe the statutes and regulations and apply them to the facts of the case.

The trial court found these notes to be "definite" and stated:

Defendant's contention that the notes are "indefinite as to time, liability or amount" under Reg. section 1.483–1(e) is without merit. First, there is no question concerning liability for the notes. The notes are liabilities of Lincoln Property Company XIX, Ltd., a Texas limited partnership with substantial general partners.

Second, the amount of each note is clearly stated and no principal sum greater or lesser is payable.

Third, there is no question when the notes are to be paid. They are due sixteen years after issuance. There is a definite time. They may be prepaid if there is cash flow from the LPC XIX partnership.

The trial court then stated that under the ordinary rules of bills and notes as expressed in Texas case law, the prepayment provisions of the notes under consideration in this case do not make the notes "indefinite," citing section 3.104(a) of the Texas Business and Commerce Code.

■ Of course, the trial court correctly found that there was no question concerning liability for the notes. Also, it was correct in stating that the amount of each note is clearly stated. However, the statement that "there is no question when the notes are to be paid" is clearly erroneous. It is true that "the notes are due sixteen years after issuance. That is a definite time." However, it was inaccurate to say that "they may be prepaid if there is cash flow from the LPC XIX partnership." The fact is that they must be repaid if there is cash flow from the LPC XIX partnership. Finally, the reference to Chapter 3 of the Texas Business and Commerce Code is irrelevant to the issue here, since it merely defines a negotiable instrument. No one has contested the fact that these promissory notes are negotiable instruments. The question we have to deal with is one which is raised by the use of the words "definite" and "indefinite" in a federal tax statute, which of course can in no way be modified by a definition of a negotiable instrument for state law purposes.

■ Provisions of section 483 differ with respect to whether the deferred payments are "definite" or "indefinite." Section 483(d), under the caption "Payments that are indefinite as to time, liability, or amount," refers to "a contract for the sale or exchange of property under which the liability for, or the amount or due date of, any portion of a payment cannot be determined at the time of the sale or exchange." A common sense reading of the notes in question would seem beyond cavil to require the conclusion that these notes are a classic example of payments that are indefinite as to time and amount. They are not indefinite as to liability. As we have noted above, the notes require the payment by LPC of "an amount equal to each distribu-

tion by the . . . limited partnership to the original limited partners, their successors and assigns, of net cash flow . . , which the said original limited partners . . . are entitled to receive under the aforesaid agreement creating said limited partnership." Thus, it is apparent that there is an undefined due date for the payment of uncertain amounts, which make the notes "indefinite" in two respects by any ordinary meaning of the words.

The trial court twice referred to the requirement of payment in advance of the sixteen year maturity date in terms of a voluntary act by the maker of the note. The court used the term "may" instead of the "must" which is clearly required by the language of the instruments: "The principal sum of this note shall be reduced in an amount equal . . . ." Thus, the due date of the notes depends upon the existence of a net cash flow to LPC, which was unknown in amount and as to time when the notes were executed.

The trial court's appellation of this obligatory payment as a "prepayment," so as to take the notes out from under the provisions of section 483(d), is also incorrect. "Prepayment" must necessarily mean payment before the due date. Here, the payments with which we are concerned are not payments, if made, before the due date, but payments made on the due date, which however could not be known to the parties at the time of the execution of the notes.

It seems clear that to treat the contingent payments here as "prepayments" would completely nullify the statutory distinction between notes definite as to the "due date" and those which are not. There is a need for such a distinction. The provisions of section 483 applicable to definite, non-interest bearing notes are so simple to apply that regulations provide a tabular computation which simply discounts the face amount of the note to its present value by attributing a part of the principal to interest at a specified rate. Such a computation is impossible if the date of payment cannot be determined from the face of the instrument. The provision in section 483(e) which deals with the situation when the

parties "change" the terms of such a contract and treat a "late payment or early payment (including prepayment)" as constituting a "change" deals only with a specialized situation. It is intended to provide a limited special rule when the purport of the original notes is changed. It does not deal with instruments that are in no way "changed", but that are carried out literally as "nominated in the bond." Merchant of Venice, Act IV, Scene 2.

■ This is a case of first impression. We, therefore, apply normal rules of statutory construction to determine what is meant by the several provisions of section 483. Under such rules, the plain, unambiguous meaning to be derived from the words of a statute is to be accorded them if to do so is consistent with the purpose of the law. *Flora v. United States*, 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958); *Helvering v. Hammel*, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303 (1940).

■ There remains the argument of the taxpayers that the general rules of section 1001 that promissory notes acquired as part of the purchase price of property must be taken at their "fair market value" is modified by sections 483(a) and (b). That is to say, if notes received as part payment for a sale of property bear no interest, they are to be taken at the tabular rate set out in regulations under sections 483(a) and (b) rather than at fair market value. It was so held by the trial court.

The difficulty with this proposition is that section 1001 is a general statute dealing with the ascertainment of gain or loss on a sale, and there is no indication that Congress intended to amend that statute by the adoption of section 483. Section 483 deals with a specialized class of promissory notes—those that bear no interest—and was designed to bifurcate the face amount of such notes so that true interest would be taxed as ordinary income and true principal could be treated as capital gains if in excess of basis. In order to make the division, Congress authorized the Commissioner to issue regulations. These regulations provide for the ascertainment of value by discounting the face amount of the notes. How-

ever, by its very terms, this provision clearly draws a distinction between those notes which are "definite" and those which are "indefinite." Since these notes are "indefinite" and thus not properly subject to the simple discounting procedure, this method of valuation does not apply. The general rule dealing with the valuation of promissory notes taken in exchange for real property must apply even though a more difficult valuation procedure may be required.

In conclusion, we hold that section 483(d) controls the treatment for tax purposes of the promissory notes in issue and that the notes are required to be valued as of the date of their delivery as required under sections 1001(a) and (b).

The judgment is REVERSED and the case is REMANDED for further proceedings not inconsistent with this opinion.