ELEANOR M. BALLARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ballard v. Commissioner
Docket No. 37108-85.
United States Tax Court
T.C. Memo 1987-128; 1987 Tax Ct. Memo LEXIS 123; 53 T.C.M. (CCH) 323; T.C.M. (RIA) 87128; March 10, 1987. Lawrence A. Jegen III, for the petitioner. Russell D. Pinkerton, for the respondent. *125 PARKER
MEMORANDUM OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's gift tax for the calendar quarter ended June 30, 1981, in the amount of $87,618.17, and a section 6651(a)(1) [1] addition to the tax in the amount of $13,142.73. The issues for decision are: (1) Whether petitioner may use the interest rates published in the regulations under section 483 to value an intra-family installment sale for gift tax purposes when these published interest rates are less than the prevailing market interest rate on the date of the transfer; [2] and (2) Whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1). *126 This case was submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Eleanor M. Ballard resided in Greencastle, Indiana at the time the petition was filed in this case. On October 26, 1981, she filed a United States Gift Tax Return (Form 709) for the calendar quarter ended June 30, 1981, with the Internal Revenue Service Center in Memphis, Tennessee. This return was not timely filed. Petitioner did not timely file her gift tax return because at the time such return was due, she believed, based on advice from her attorney, that there was no gift tax due with the return. Petitioner's attorney also advised her that since there was no gift tax due with the return, she would not incur any additions or interest due to late filing. On June 23, 1981, petitioner entered into a "Contract For Conditional Sale of Real Estate" (the contract) whereby she sold the Putnam County, Indiana real estate described therein to her three adult children, Philip Lee Ballard, Marilynn Jean Hunter, and Sara Jane Niles (the purchasers). The purchase price as stated in the contract was Three Hundred Eighty-Six Thousand *127 Dollars ($386,000). The legal description of the real estate contained in the contract erroneously included 291 acres. This was an unintentional error, and only 286 acres were actually intended to be transferred pursuant to the contract. At some point during 1984, an Addendum to this contract was executed, clarifying that only 286 acres were transferred. The parties in this case now agree that 286 acres is the correct number of acres involved in the transfer. Sherman McKee, Jr., an appraiser located in Greencastle, Indiana, appraised the 286 acres transferred and prepared a written report dated September 26, 1983. In his report, Mr. McKee determined that at the time of the transfer the 286 acres had a fair market value of $572,000. Petitioner reported a gift on the Form 709 in the amount of the difference between the fair market value of the real estate and the purchase price stated in the contract. The Form 709 was filed prior to the completion of the written appraisal, and petitioner, in computing the gift on the Form 709, used a fair market value of $570,000 pursuant to an oral estimate she received from Mr. McKee. Petitioner thus calculated the gift as follows: Value of real estate being sold
$570,000
Face value of contract
386,000
Value of gift
$184,000
*128 The parties in this case now agree that the 286 acres of real estate had a fair market value of $572,000 on the date of the transfer and that the $570,000 amount shown on the Form 709 should have been $572,000. In addition the Form 709 stated that each of the three donees received an undivided 32 percent of the gifted real estate. However, the parties in this case are now in agreement that each of the three donees received 33-1/3 percent of the real estate pursuant to the contract. The contract provided for a purchase price of $386,000 to be paid as hereafter described. The sum of $1,000 was to be paid by the purchasers at the time of execution and delivery of the contract. The remaining unpaid principal balance, $385,000, together with simple interest at the rate of six percent (6%) per annum, was to be paid in annual payments as follows: during the first five (5) years of the contract, the purchasers were to pay interest only, with the first payment of $23,100 due on the date one year after the date of the execution of the contract, and with a like amount due on the same date for the next succeeding four (4) years. Commencing on the first day of the sixth year of the *129 contract, the purchasers were to pay to petitioner the sum of $25,590.95, which amount included principal and interest (at 6 percent). The purchasers were to pay a like amount on or before the same anniversary date each year thereafter until the remainder of the purchase price, together with interest, had been paid in full. If the purchase price were paid according to the terms set out in the contract, it would be paid in full in forty-five (45) years, or in the year 2026. Petitioner, 68 years old at the time the contract was entered into, would be 113 years old when the contract was finally paid off, and the donees would be from 84 to 87 years old. At the time the contract was executed, the prime rate of interest charged by large commercial banks was 20 percent. The interest rate charged on loans to brokers on stock exchange collateral (call money) was 20.5 to 21 percent. The interest rates charged for high-grade unsecured notes (commercial paper) sold through dealers by major corporations in multiples of $1,000 were 17.75 percent for 30 days, 17 percent for 60 days, and 16.75 percent for 90 days. On June 23, 1981, mortgage rates of interest at the 1st Citizen's Bank of Greencastle, *130 Indiana varied from 15.75 percent to 16.5 percent, depending on the amount of down payment, the length of the loan, and the terms thereof. Also at that time, the interest rate charged on mortgages by the Greencastle (Indiana) Federal Savings Bank ranged from 15.5 percent to 17.5 percent, depending on the length of the loan and the amount of the down payment. The interest rate on farm loans charged by the Federal Land Bank of Greencastle, Indiana was 11.25 percent for the period June 1, 1981 through August 31, 1981, but this was a variable rate and the Federal Land Bank required the borrower to purchase stock in that bank in direct proportion to the loan amount. By statutory notice of deficiency dated July 8, 1985, respondent determined that the contract principal payments, equal to a face value of $386,000, were worth less than their face value. Respondent determined a fair market value for the contract payments in the amount of $134,298.26 by discounting the principal payments to equal an 18 percent interest rate. Using this figure in computing the amount of the gift, respondent determined a deficiency in petitioner's gift taxes for the calendar quarter ended June 30, 1981, in *131 the amount of $87,618.17. Additionally, respondent determined there was an addition to the tax under section 6651(a)(1) in the amount of $13,142.73. This lawsuit ensued. The gift tax deficiency determined by respondent was based on the transfer of 291 acres. The parties are now in agreement that only 286 acres were transferred and that the amount of gift tax and the addition to tax now in dispute are $84,218.17 and $12,632.73, respectively. Petitioner relies on section 483 and the regulations thereunder and maintains that the use of a six percent interest rate pursuant to section 483 should not generate any gift tax in this case. In the alternative, petitioner contends that if she is not entitled to rely on the six percent interest rate in the regulations under section 483, the 18 percent interest rate used by respondent is not the correct rate to use. Where property is transferred for less than an adequate and full consideration in money or money's worth, the amount by which the value of the property exceeds the value of the consideration shall be deemed a gift subject to tax. Sec. 2512(b). In the persent case, the parties agree the property transferred by petitioner, 286 *132 acres of Indiana real estate, had a fair market value of $572,000 on the date of the transfer. The dispute in this case concerns the value of the consideration received by petitioner for the transfer of that real estate. Petitioner argues that the purchase price stated in the contract for sale, $386,000, is the value of the consideration received by her for purposes of computing any gift tax liability. Thus, the value of the gift according to petitioner would be $186,000 ($572,000 fair market value of land less $386,000 stated purchase price). Respondent, taking into consideration the 45-year payout of the purchase price with a six percent interest rate, and the fact that only interest is paid for the first five years, argues that the stated purchase price should be discounted. Respondent discounts the purchase price using an 18 percent interest rate to arrive at a present value of $134,299.63. [3] Respondent argues that this amount, $134,299.63, plus the $1,000 down payment, is the fair market value of the consideration received by petitioner for purposes of computing any gift tax liability. *133 Petitioner argues that she was entitled to rely on section 483 and the regulations thereunder for her use of a six percent interest rate in structuring the transfer in question. [4] Section 483 was enacted as part of the Revenue Act of 1964. [5] Before the enactment of section 483, an individual could sell a capital asset on the installment basis without making any specific provisions for interest payments on installments. In such cases the full difference between the cost or other basis for the property and the stated sales price usually was treated as capital gain to the seller. By structuring their sales transactions in such a manner, taxpayers would be reporting as capital gain a portion of the amount which was, in effect, interest income. Congress saw no reason for not reporting amounts as interest income merely because the seller and purchaser did not specifically provide for interest payments. This manipulation of the tax laws to characterize ordinary interest income as capital gain was the specific problem Congress intended to cure when it enacted section 483. H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 196. Section 483 solves this *134 problem by providing, generally, that where property is sold on an installment basis and part or all of the payments are due more than one year after the date of the sale, with no provision for interest payments or a provision for too low interest payments, then part of each installment due after six months is to be treated as interest rather than as part of the sales price. The interest rates used for purposes of applying section 483 are set out in the regulations thereunder. *135 Petitioner argues that she should owe no additional gift taxes on this transfer since the six percent interest rate used in the contract is the same rate published in the regulations under section 483 for imputed interest on sales and exchanges. Petitioner bases her argument on the first clause of section 483(a), which reads "For purposes of this title * * *." By referring to "this title," petitioner argues that it must be assumed that Congress intended that section 483 would apply to both the income tax provisions of subtitle A and to the estate and gift tax provisions of subtitle B. Petitioner follows with a statutory construction argument, citing this Court for the principle that where a statute is clear on its face, unequivocal evidence of legislative purpose is required in order to override the plain meaning of the words which are used in the statute. Huntsberry v. Commissioner,83 T.C. 742, 747-748 (1984). We agree with petitioner that section 483, by its own words, is not restricted to subtitle A of the Code. It is petitioner's application of section 483 for valuation purposes that we cannot accept. The issue in this case is valuation, namely, the value *136 for gift tax purposes of the consideration received by petitioner in transferring the real estate described in the contract for sale. The value of property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. Sec. 25.2512-1, Gift Tax Regs. Thus, proper valuation in gift tax cases looks to fair market value and its notions of a willing buyer and willing seller. Section 483 has nothing to do with valuation. The purpose of section 483 is to recharacterize portions of payments on certain installment sales of property as interest payments when not enough interest has been provided for in the installment contract. We are not concerned here with the characterization as ordinary income or capital gain of any installment payments petitioner may receive under that contract in the future. We are concerned with the present value of all the payments she will receive under that contract. From a careful reading of section 483, its regulations, legislative history, and pertinent case law, we cannot find that the interest rates published *137 in the regulations thereunder could or should be relied on for gift tax valuation purposes. [6]
In Caruth v. United States,566 F.2d 901 (5th Cir. 1978), the issue was the valuation, for purposes of computing gain or loss under section 1001, of non-interest-bearing promissory notes received as partial consideration on a sale of real estate. The taxpayer argued that the general rule of section 1001, that promissory notes acquired as part of the purchase price of property must be taken at their fair market value, is modified by sections 483(a) and (b). In other words, the taxpayer argued the promissory notes should be valued *138 using the interest rates under section 483 rather than at their fair market value. The Fifth Circuit did not reach this issue since the notes involved were held to be indefinite under section 483(d) and thus not subject to sections 483(a) and (b). In passing, however, the Court voiced its difficulty with the taxpayer's argument, noting that "section 1001 is a general statute dealing with the ascertainment of gain or loss on a sale, and there is no indication that Congress intended to amend that statute by the adoption of section 483." Caruth v. United States,supra at 905. We have the same difficulty with petitioner's argument in the present case. The legislative history under section 483 gives no indication that Congress intended to amend the general principles of section 2512 by its adoption of section 483. We find unpersuasive petitioner's argument that the first clause in section 483(a), stating that section 483 is to apply for purposes of "this title," justifies her reliance on the interest rates published under such section for gift tax valuation purposes. We think that is too frail a reed to support a departure from the long-established valuation principles *139 in the gift tax area. Petitioner also argues that respondent's position is not supported by either case law or statutory law. We cannot agree. The case of Blackburn v. Commissioner,20 T.C. 204 (1953), is directly on point. In Blackburn, taxpayer, a 62-year-old woman, transferred to her two children real property in the city of Amarillo, Texas, having a fair market value of $245,000. She received from her children in consideration for the transfer a note in the face amount of $172,517.65 secured by a mortgage on the property. The note bore interest at the rate of two and one quarter percent per annum and was payable in monthly installments of $600, payable over a period of 34 years and six months. The usual rate of interest charged on real estate mortgage loans in Amarillo at the time of this transaction was four percent per annum. In computing the amount of her gift, taxpayer argued that the note had a fair market value equal to its face value, $172,517.65. The Commissioner contended that since the going rate of interest on similar loans was four percent, the face value of the note was not its true fair market value. Discounting the note at the rate of *140 four percent, the Commissioner argued the note's fair market value was only $134,538.30. The Court, in sustaining the Commissioner's position, stated that "it would be unrealistic for us to hold that a note with a face value of $172,517.65, bearing interest only at the rate of 2-1/4 per cent per annum and having 34-1/2 years to run, had a fair market value on the date of its receipt equal to its face value." Blackburn v. Commissioner,supra at 207. [7]
Petitioner argues that Blackburn is distinguishable simply because section 483 was not then in existence. However, in the legislative history to section 483, there is no mention or suggestion that section 483 would have any effect, retroactively or prospectively, on the basic valuation principle followed in Blackburn.[8] We think such a significant change in valuation for gift tax purposes, had it been intended by Congress, would not have been passed over in silence. This strengthens respondent's argument that if Congress intended any application of section 483 for gift tax valuation purposes, it surely would have *141 said so and identified when and how it was to be applied in that area. Petitioner next argues that respondent's position is contrary to the continuing efforts of Congress to bring greater certainty to this area of the law, and would lead to inequitable results. Petitioner draws a parallel to section 7872, which sets forth various income and gift tax rules for below-market rate loans. Section 7872 was the legislature's response to the Supreme Court's decision in Dickman v. Commissioner,465 U.S. 330 (1984). Dickman settled a long-standing question by ruling that intra-family, interest-free loans constitute taxable gifts to the extent of the reasonable value of the money lent. The valuation issue was not before the Supreme Court but the Court noted in passing that "it is sufficient for the Commissioner to establish that a certain yield could readily be secured and that the reasonable value of the use of the funds can be reliably ascertained." 465 U.S. at 344 n.14. Under section 7872, there is no gift if the loan uses the applicable *142 Federal rate, [9] even if the applicable Federal rate is less than the prevailing market rate. Petitioner argues this demonstrates that Congress approves the general principle that no taxable gift is created when a loan is set at published interest rates even though those interest rates are below the prevailing market interest rate. Petitioner's argument ignores the changes wrought by the Supreme Court's opinion in Dickman and the legislative response thereto. Petitioner says respondent's position in this case would lead to inequitable results when compared with situations arising under section 7872. If so, that is the result of a change in the law which does not apply to this case. In any event, petitioner attempts to show what she perceives as an inequity by noting that in situations covered by section 7872, the taxpayer is not subject to the gift tax if the taxpayer charges interest equal to the applicable Federal rate. On the other hand, petitioner says under respondent's interpretation of section 483, the taxpayer is subject to the gift tax if the taxpayer fails to charge interest at the prevailing market rate, even if that rate equals or exceeds the interest rate under *143 section 483. Petitioner argues the same principles should operate in both situations, that there is no justification for imposing a gift tax in one situation while not imposing one in the other, and that such an inequitable result should not be imputed to Congress. There is a major fallacy in petitioner's argument. Section 7872 simply has no application to the pre-Dickman period or to this case, because Congress chose to make these legislative changes prospective only. The effective date of the transfer in the present case is June 23, 1981. Section 7872 generally applies to term loans made after June 6, 1984, and to demand loans outstanding after June 6, 1984. The legislative history of section 7872 specifically states that no inference is intended with respect to the application of present law to any below-market loan outstanding prior to the effective date. [10] H. Rept. No. 98-861, 1984-3 C.B. (Vol. 2) 277. Petitioner's argument that Congress, by enacting section 7872, approved the general principle that no taxable gift is created when a loan is set at published interest rates even though those interest rates are below the prevailing *144 market interest rate, is unpersuasive, considering section 7872's effective date, prospective application, and comprehensive treatment of the income and gift tax consequences of below-market and interest-free loans. While section 7872 probably means that a case such as the present one cannot arise in the future, it provides no assistance in the resolution of this case. We are also unpersuaded by petitioner's general equity argument. We agree with petitioner that similarly situated taxpayers should be treated in the same manner regardless of the nature of the property transferred by gift (i.e., cash or property other than cash). They are; prior to June 7, 1984, all gifts are precluded from the treatment provided by section 7872. Gifts prior to June 7, 1984, must be valued and *145 taxed under the gift tax law in effect on the date of the transfer. We conclude, therefore, that petitioner was not entitled to rely on section 483 and the six percent interest rate under the regulations thereto to value the consideration she received under the contract for sale. Petitioner argues, in the alternative, that if she is not entitled to rely on the six percent interest rate set forth in the regulations under section 483, that the 18 percent interest rate used by respondent is not the correct rate to use. The Commissioner's determination of a deficiency is presumed to be correct and the taxpayer has the burden of proving it incorrect. Welch v. Helvering,290 U.S. 111 (1933). Petitioner argues that the method used in Blackburn v. Commissioner,supra, is the proper method for calculating the value of the gift in the present case. In discounting the note in Blackburn to calculate its fair market value for gift tax purposes, the Court used the interest rate charged on similar real estate mortgage loans in the community at the time of the transfer. 20 T.C. at 207. We agree this is a proper method. Here, the stipulation *146 of facts and stipulated exhibits contain ample evidence as to various rates of interest charged as of the date of the gift. [11]
On the date of the gift, the prime rate was 20 percent. The interest rate charged on loans to brokers on stock exchange collateral (call money) ranged from 20.5 percent to 21 percent. The interest charged for high-grade unsecured notes (commercial paper) ranged from 16.75 percent to 17.75 percent for periods not exceeding 90 days. Mortgage rates at the Greencastle Federal Savings Bank in Greencastle, Indiana ranged from 15.5 percent to 17.5 *147 percent depending on the amount of the down payment, the length of the loan, and terms thereof. The interest rate on mortgage loans at 1st Citizen's Bank of Greencastle, Indiana ranged from 15.75 to 16.5 percent. The interest rate on farm loans at the Federal Land Bank in Greencastle, Indiana was 11.25 percent, but that was a variable rather than a fixed rate and required the borrower to purchase stock in the Federal Land Bank. Respondent argues that the 18 percent rate used in the notice of deficiency was determined after consideration of the various rates above. Respondent argues there is no true comparable interest rate for a 45-year contract with no principal payments for the first five years. Respondent submits that his determination is fair and realistic, and argues that a much greater discount, and correspondingly a greater gift tax, could easily have been determined due to the extremely favorable terms of the contract. In applying the method used in Blackburn v. Commissioner,supra, we think somewhat more emphasis should be placed on the interest rates from the Greencastle Federal Savings Bank and the 1st Citizen's Bank of Greencastle. We think *148 these rates more closely reflect the interest rate charged on real estate loans. However, we agree that the terms of the contract in this case are quite favorable and possibly more favorable than one could get from any bank, so we think we must look to the high side of these interest rates. Accordingly, we find that 16 percent is a more realistic interest rate for the contract in question. Thus, we hold that the contract payments should be discounted to a 16 percent interest rate in determining the contract's fair market value for gift tax purposes. See n.3, supra.
The final issue for decision is whether petitioner is liable for the addition to tax pursuant to section 6651(a)(1). Respondent determined there was an addition to the tax under section 6651(a)(1) due to petitioner's failure to timely file the gift tax return (Form 709) in question. [12] Under section 6651(a)(1), no additions to tax are imposed if the failure to file a timely return is due to reasonable cause and not due to willful neglect. Petitioner argues that her failure to file a timely return was due to reasonable cause because she relied on her attorneys' statements that timely filing was not required in *149 her circumstances. A letter in evidence, dated August 13, 1981, from G. Weldon Johnson, an attorney in Indianapolis, Indiana, to petitioner's attorney in Greencastle, Indiana, regarding the gift in question states in pertinent part: As I stated above the Gift Tax return should be filed by August 15th, but since there is no tax due there will be no penalty and no interest for late filing. Petitioner believed, based on the oral and written statements of her attorneys, that the gift tax return was solely for the purpose of providing the Government with information and that no gift tax was due. This Court has held that reliance on the advice of an attorney that timely filing was unnecessary because the taxpayer would incur no additions to tax because he had no tax liability was unreasonable. Jackson v. Commissioner,86 T.C. 492, 538 (1986). The Court in Jackson held such reliance by the taxpayer did not meet his burden of showing that his failure to file *150 a timely return was due to reasonable cause. 86 T.C. at 539. Thus, the taxpayer was held liable for the additions to tax under section 6651(a)(1). This reliance upon advice that no tax is due must be distinguished from reliance on the advice of an attorney that it is unnecessary to file a return. Courts have frequently held that reliance on legal advice that no return need be filed constitutes reasonable cause under the statute. See, e.g., United States v. Boyle,469 U.S. 241 (1985); United States v. Kroll,547 F.2d 393, 395-396 (7th Cir. 1977). In the present case, however, petitioner's attorneys did not advise her that it was unnecessary to file the gift tax return in question. She admittedly knew a return was due. Petitioner failed to timely file her return because her attorneys advised her that since there was no gift tax due (as computed by petitioner's advisors) there would be no additions or interest for late filing. The advice given turned out to be wrong because of the deficiency determined by the respondent. We find that the petitioner must bear the burden of this error. Petitioner having failed to meet the burden of *151 showing her failure to timely file was due to reasonable cause, the addition to tax under section 6651(a)(1) is proper. [13]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the calendar quarter in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
2. The parties stipulated to a statement of this issue, but on brief each party rephrased the issue in somewhat different language. The Court has phrased the issue comprehensively but without overtones of advocacy. Also the stipulation of facts states this issue as whether petitioner may rely upon the interest rates published in the regulations under sections 482, 483, and 2512, but only the six percent rate under the regulations pursuant to section 483 is discussed by petitioner on brief.↩
3. In other words, based on the stated interest rate, compounded annually, the present worth of $23,100 ($385,000 X .06) per annum payable for five years plus the present worth of $25,590.95 per annum payable for 39 years, first payment six years after the contract date, plus↩ the present worth of $25,080.02 due 45 years hence is $134,299.63. This figure of $134,299.63 differs slightly from the $134,298.26 stipulated to by the parties and the $134,299.50 actually used in the statutory notice of deficiency. However, these minor discrepancies can no doubt be resolved in any proceedings under Rule 155.
4. The applicable regulation petitioner relies on is section 1.483-1(d)(1)(ii)(B), Income Tax Regs.↩
5. Pub. L. 88-272, § 224(a), 78 Stat. 77, 78. Section 483, in pertinent part, as of the applicable valuation date, read as follows: Sec. 483 INTEREST ON CERTAIN DEFERRED PAYMENTS. (a) Amount Constituting Interest. -- For purposes of this title, in the case of any contract for the sale or exchange of property there shall be treated as interest that part of a payment to which this section applies which bears the same ratio to the amount of such payment as the total unstated interest under such contract bears to the total of the payments to which this section applies which are due under such contract. (b) Total Unstated Interest. -- For purposes of this section, the term "total unstated interest" means, with respect to a contract for the sale or exchange of property, an amount equal to the excess of- (1) the sum of the payments to which this section applies which are due under the contract, over (2) the sum of the present values of such payments and the present values of any interest payments due under the contract. For purposes of paragraph (2), the present value of a payment shall be determined, as of the date of the sale or exchange, by discounting such payment at the rate, and in the manner, provided in regulations prescribed by the Secretary. Such regulations shall provide for discounting on the basis of 6-month brackets and shall provide that the present value of any interest payment due not more than 6 months after the date of the sale or exchange is an amount equal to 100 percent of such payment. (c) Payments to Which Section Applies. -- (1) In General. -- Except as provided in subsection (f), this section shall apply to any payment on account of the sale or exchange of property which constitutes part or all of the sales price and which is due more than 6 months after the date of such sale or exchange under a contract -- (A) under which some or all of the payments are due more than one year after the date of such sale or exchange, and (B) under which, using a rate provided by regulations prescribed by the Secretary for purposes of this subsection, there is total unstated interest. Any rate prescribed for determining whether there is total unstated interest for purposes of subparagraph (B) shall be at least one percentage point lower than the rate prescribed for purposes of subsection (b)(2). (2) Treatment of Evidence of Indebtedness. -- For purposes of this section, an evidence of indebtedness of the purchaser given in consideration for the sale or exchange of property shall not be considered a payment, and any payment due under such evidence of indebtedness shall be treated as due under the contract for the sale or exchange.↩
6. The House Report to the bill enacting section 483 did anticipate that the interest rates to be set by the Secretary would reflect the going rate of interest. H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. 196↩. However, the parties have stipulated that the published rates in the regulations are below the prevailing market interest rate on the date of the transfer. Of course, if the interest rates under the section 483 regulations reflected the market rates on that date, petitioner's argument would not arise.
7. See also, Estate of Berkman v. Commissioner,T.C. Memo. 1979-46↩.
8. See H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 196, 332-336, 605-608.↩
9. See section 1274(d).↩
10. The proposed regulations to section 7872 state that section 7872 does not alter the law applicable to below-market loans for periods prior to the effective date of section 7872. They also specifically state that any below-market loan not subject to section 7872 by reason of the effective date provisions may still have Federal tax consequences. 50 Fed. Reg. 33557↩ (August 20, 1985).
11. The case was submitted to the Court at a trial session fully stipulated. On brief, petitioner argues for the first time that if the Court does not accept her section 483 argument (and its six percent interest rate), the record should be reopened for evidence as to the proper interest rate. The case was calendared for trial and the parties chose to submit the case on a stipulation without trial. Under those circumstances, we see no reason to give a litigant a second bite at the apple. In any event, we are satisfied that the stipulated facts and exhibits are adequate to determine the interest rate issue.↩
12. Under section 6075(b)(1), petitioner's gift tax return for the calendar quarter ended June 30, 1981, was due on August 17, 1981. Petitioner's Form 709 for that quarter was filed on October 26, 1981.↩
13. Because we find petitioner did not have reasonable cause for her failure to timely file the gift tax return in question, we do not need to address the question of whether the failure to timely file was also caused by willful neglect. Section 6651(a)(1).↩