**In re Nelson Bunker HUNT
and Caroline Lewis
Hunt, Debtors.**

**In re William Herbert HUNT and Nancy
Jane Broaddus Hunt, Debtors.**

**R. Carter PATE, as Independent Trustee
of the Nelson Bunker Hunt Liquidating
Trust, and Steven S. Turoff, as Inde-
pendent Trustee of the William Herbert
Hunt Liquidating Trust, Plaintiffs,**

**v.**

**Houston Bunker HUNT,
et al., Defendants.**

**Nos. 388–35726–HCA–11, 388–35791–
HCA–11, 388–35725–HCA–11
and 388–35794–HCA–11.
Nos. 391–3331, 391–3332.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Nov. 27, 1991.

Marty Harper, Gerald K. Smith, Lewis and Roca, Phoenix, Ariz., for plaintiffs.

Tom Thomas, Donald R. Rector, Kolodey & Thomas, Dallas, Tex., for Huddleston.

Vernon O. Teofan, Jenkens & Gilschrist, P.C., Albert G. McGrath, Jr., Holmes Millard & Duncan, P.C., Terrell W. Oxford, Susman Godfrey, Dallas, Tex., for Herbert Hunt.

H. DeWayne Hale, Hale, Spencer, Stanley, Pronske & Trust, P.C., Dallas, Tex., for Carlsbad Partners, Ltd.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

### I. PROCEDURAL BACKGROUND

The matter before the Court arises on several motions to dismiss filed by various groups of defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012(b). The underlying adversary proceeding was initiated on June 11, 1991, when R. Carter Pate ("Pate"), as Independent Trustee of the Nelson Bunker Hunt Liquidating Trust, and Steven S. Turoff

("Turoff"), as Independent Trustee of the William Herbert Hunt Liquidating Trust (collectively referred to as "Plaintiffs") filed identical complaints (the "Complaints") to avoid and recover alleged fraudulent conveyances and preferential transfers pursuant to Sections 544, 547, 548 and 550 of the United States Bankruptcy Code (the "Code"). The adversary proceedings were consolidated under Adversary No. 391–3331 pursuant to the Agreed Order Consolidating Adversary Proceedings entered on July 22, 1991.

The Complaints were brought against numerous defendants. All of the individual defendants are relatives of the Debtors, or are trustees of trusts created for the benefit of the Debtors' children and grandchildren. All of the corporate, general partnership, and limited partnership defendants (with the exception of Southwestern Life Insurance Company and Paloma Corporation) are entities in which the individual defendants and/or their trusts have an ownership interest. For the sake of consistency with the pleadings that have been filed in this Adversary, the Court will refer to the groups of defendants in a similar fashion as the parties have previously referred to them. The "Herbert Hunt"[1] defendants (hereinafter referred to as the "Herbert Hunt Defendants") filed their Motion to Dismiss on July 29, 1991. Carlsbad Partners, Ltd. ("Carlsbad") filed its Motion to Dismiss on August 2, 1991, alleging generally the same grounds in support of its motion as the Herbert Hunt Defendants. The Court will refer to another group of defendants that filed a dismissal motion as the "Huddleston Defendants".[2]

The Court finds initially that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (F), (H), (L) and (O). The findings herein, although in narrative form, are intended to comply with Federal Rule of Bankruptcy Procedure 7052. Having considered the arguments of counsel, and reviewed the relevant pleadings and law, the Court makes the following findings and conclusions.

## II. FACTUAL BACKGROUND

On September 21, 1988, Nelson Bunker Hunt and William Herbert Hunt filed voluntary petitions under Chapter 11 of the Code, thereby commencing Bankruptcy Case No. 388–35726–HCA–11 and Bankruptcy Case No. 388–35725–HCA–11 respectively. On September 23, 1988, the respective spouses filed individual Chapter 11 petitions, which were administratively consolidated with their husbands' previously filed cases.

Nelson Bunker Hunt and Caroline Lewis Hunt filed their Joint Plan of Reorganization on November 21, 1989. The Order Confirming the Joint Plan of Reorganization of Nelson Bunker Hunt and Caroline Lewis Hunt was entered on December 18, 1989. William Herbert Hunt and Nancy Jane Broaddus Hunt filed their Joint Plan of Reorganization (hereinafter the Joint Plans of Reorganization in both cases shall be referred to as the "Joint Plans") on November 21, 1989. The Order Confirming the Joint Plan of Reorganization of William Herbert Hunt and Nancy Jane Broaddus Hunt was entered on December 26, 1989.

Article V, section 5.2 of the Joint Plans provides for the creation of a Liquidating Trust for each Estate. The Liquidating Trusts were created to marshal, manage, operate, and liquidate the Trust Assets for a term of six years. Title to most of the Debtors' assets[3] vested in each respective Liquidating Trust free and clear of all liens, claims and encumbrances or interests of the Debtors, except for the rights of creditors as described by the Joint Plans and the Liquidating Trust Agreements, and liens of Allowed Secured Claims as described in section 4.3 of the Joint Plans.

---

1. See Plaintiffs' Brief in Opposition to Herbert Hunt Defendants' Motion to Dismiss filed on August 26, 1991 for a detailed review of the defendants included in this designation.

2. See the Huddleston Defendants' Motion to Dismiss for Failure to State a Claim filed on July 29, 1991 for a detailed review of the defendants included in this designation.

3. The Joint Plans provide that certain "retained assets" are to remain property of the Debtors and are not a part of the Liquidating Trust.

Following respective confirmation of the Joint Plans, the NBH Liquidating Trust was established on behalf of the bankruptcy Estates of Nelson Bunker Hunt and Caroline Lewis Hunt, and the WHH Liquidating Trust was established on behalf of the bankruptcy Estates of William Herbert Hunt and Nancy Jane Broaddus Hunt. Pate was appointed Independent Trustee of the NBH Liquidating Trust by order entered on January 8, 1990. Turoff was appointed Independent Trustee of the WHH Liquidating Trust by order entered on January 12, 1990. On June 11, 1991, Pate and Turoff initiated this Adversary Proceeding by filing their Original Complaints alleging that Nelson Bunker Hunt and William Herbert Hunt (hereinafter referred to as the "Debtors" or "Debtors in Possession") made fraudulent conveyances to or for the benefit of their relatives and affiliated entities that are voidable pursuant to sections 544, 547, and 548 with recovery under section 550 of the Code.

### III. GROUNDS FOR DISMISSAL

*A. The Herbert Hunt Defendants' Motion to Dismiss*

The Herbert Hunt Defendants have moved to dismiss the Complaints for the following reasons:

1. the Complaints fail to state a claim upon which relief can be granted because:

(a) the claims brought therein are time barred by limitations pursuant to 11 U.S.C. § 546(a);

(b) the claims are time barred under the applicable state statute of limitations;

(c) the Independent Trustees do not have standing on which to bring the asserted claims;

(d) certain claims brought by R. Carter Pate should be dismissed where he is not a real party in interest with standing to assert the claims against the Herbert Hunt Defendants;

2. the Independent Trustees have failed to aver fraud with particularity as required by Federal Rule of Civil Procedure 9(b); and

3. this Court does not have jurisdiction to consider this adversary proceeding because the exercise of jurisdiction over parties who have not filed claims in the bankruptcy cases violates their Constitutional rights.

*B. Carlsbad's Motion to Dismiss*

In support of its Motion to Dismiss, Carlsbad urges that:

1. the Complaints fail to state a claim upon which relief can be granted because:

(a) the claims brought therein are time barred by limitations pursuant to 11 U.S.C. § 546(a);

(b) the Independent Trustees do not have standing on which to bring the asserted claims;

(c) claims brought against parties other than Carlsbad should be dismissed as to Carlsbad; and

2. this Court does not have jurisdiction to consider this adversary proceeding because the exercise of jurisdiction over parties who have not filed claims in the bankruptcy cases violates their Constitutional rights.

For the purpose of discussion, the Court will treat Carlsbad with the Herbert Hunt Defendants with respect to the grounds asserted which are identical or closely related to the grounds asserted by the Herbert Hunt Defendants.

*C. The Huddleston Defendants' Motion to Dismiss*

The Huddleston Defendants assert that the Complaints should be dismissed for the following reasons:

1. the Complaints fail to state a claim upon which relief can be granted because:

(a) the claims brought therein are time barred by limitations pursuant to 11 U.S.C. § 546(a);

(b) the claims are time barred under the applicable state statute of limitations;

2. the Complaints fail to state a claim upon which relief can be granted for recovery of the alleged fraudulent transfer referred to as "YEPCO/OTS".

### IV. STANDARDS FOR MOTION TO DISMISS

■■■ The Court notes initially that a motion to dismiss for failure to state a

claim is viewed with disfavor and is rarely granted. Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (1969). The Fifth Circuit Court of Appeals has stated that the following two principles should guide a review of a motion to dismiss:

> 1) [the court] must accept as true all well pleaded facts in the complaint, and the complaint is to be liberally construed in favor of the plaintiff, and

> 2) a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

*Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). However, a court is not to accept as true conclusory allegations in the complaint, and a complaint may be dismissed where the relief sought is barred by an affirmative defense, such as the statute of limitations. *Id.*

## V. CONCLUSIONS OF LAW

### A. Constitutionality of Bankruptcy Court Jurisdiction

The Herbert Hunt Defendants argue that they are entitled to adjudication by a court created under Article III of the United States Constitution since the claims alleged in the Complaints are primarily fraudulent conveyance claims. They argue that the fraudulent conveyance claims are more akin to state law claims over which a bankruptcy court does not have jurisdiction.

■ Federal courts generally have an independent duty to determine their jurisdiction. *ITT Diversified Credit Corp. v. Lift & Equip. Serv., Inc. (In re Lift & Equip. Serv., Inc.)*, 816 F.2d 1013, 1015 (5th Cir. 1987), *modified on other grounds*, 819 F.2d 546 (5th Cir.1987). The Court determines these Adversary Proceedings to be

core proceedings pursuant to 28 U.S.C. § 157.

■ Despite the Herbert Hunt Defendants' contention that the Complaints rely primarily upon state law, Plaintiffs have asserted avoidance claims under sections 547 and 548 of the Code, thereby invoking federal law. Furthermore, even though a trustee utilizes state law to invoke § 544(b), a fraudulent conveyance action under § 544(b) falls within the scope of 28 U.S.C. § 157(b)(2)(H) as a core proceeding. *Duck v. Munn (In re Mankin)*, 823 F.2d 1296 (9th Cir.1987), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). Therefore, since this is a core proceeding, the Court has the power to conduct a jury trial[4] and enter final orders in this case. *See* 28 U.S.C. § 157(b)(1).

Even if the matter were not a core proceeding, at the very least it would be a related proceeding. 28 U.S.C. § 157(c)(1). In a related proceeding, unless the District Court acts to withdraw the reference, this Court would simply be limited to the submission of proposed findings of fact and conclusions of law to the District Court. 28 U.S.C. § 157(c); *Slutsky v. Byrd (In re Byrd)*, 51 B.R. 645, 649 (Bankr.S.D.Ohio 1985). Furthermore, 28 U.S.C. § 157 does not run afoul of the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion) since the district court, an Article III court, maintains original jurisdiction over adversary proceedings pursuant to 28 U.S.C. § 1334(b). *Carlton v. BAWW, Inc.*, 751 F.2d 781 (5th Cir.1985); *Earle Indus., Inc. v. Bond Gen. Contracting, Inc. (In re Earle Indus., Inc.)*, 71 B.R. 919 (Bankr. E.D.Pa.1987). Therefore, the Court concludes that its exercise of jurisdiction over this Adversary Proceeding is proper.

### B. Standing of Independent Trustees to bring avoidance actions pursuant to 11 U.S.C. § 1123(b)(3)

■ Plaintiffs assert authority to pursue their lawsuit under section 15.9 of the Joint Plans, which provides as follows:

*Kugler–Morris General Contractors, Inc.*, 67 B.R. 260, 265 (N.D.Tex.1986).

---

**4.** *Salisbury v. Wallace (In re Wallace)*, 127 B.R. 1000 (N.D.Tex.1991); *M & E Contractors, Inc. v.*

All rights and causes of action pursuant to (i) §§ 502, 542, 544, 545, 546, 550 and 553 of the Bankruptcy Code; (ii) preference claims pursuant to § 547 of the Bankruptcy Code; (iii) fraudulent transfer claims pursuant to § 548 of the Bankruptcy Code; (iv) claims relating to post-petition transactions pursuant to § 549 of the Bankruptcy Code; (v) all claims and causes of action held against third parties as of the Confirmation Date, are hereby *preserved for the benefit of the Debtors' estate,* except as otherwise provided in the settlement of the IRS Claim. Except as to those transfers or payments specifically detailed in the Debtors' Schedules and Statement of Affairs to or for the benefit of the debtors' children, grandchildren or family members, *the Independent Trustee shall have the right to bring such claims or causes of action on behalf of the Debtors' estate,* subject to Bankruptcy Court approval, provided however, nothing contained herein shall preclude the Independent Trustee from pursuing those transactions set forth in the Debtors' Schedules and Statement of Affairs relating to the C.L. Hunt Irrevocable Life Insurance Trust; Aegina, Inc.; Naxos, Inc.; Bluegrass Farm Racing, Inc.; Wildacres Investment, Ltd.; Yemen Exploration Petroleum Co., Ltd. or Oilfield Technology Services, Inc. Any proceeds generated from the prosecution or settlement of such claims or causes of action shall be added to the Trust Assets for distribution to Creditor Claims, after deduction of reasonable fees and expenses associated with the prosecution and settlement of such claims or causes of action. To the extent permitted by law, all rights under § 363(h) of the Bankruptcy Code are also preserved for the benefit of the Debtors' estate, and the Independent Trustee shall have the right to exercise those rights subject to Bankruptcy Court approval.

(Joint Plans section 15.9.) (emphasis added). Plaintiffs have cited numerous cases to support their position, most of which the Court will address below.

The Herbert Hunt Defendants argue that Plaintiffs do not have standing to bring the Complaints because Plaintiffs do not own the claims that they assert. The Herbert Hunt Defendants argue that the Independent Trustees did not and could not have received an assignment of the claims, and therefore, they assert that Plaintiffs do not have standing to bring the Complaints.

The Herbert Hunt Defendants also contend that § 544 avoidance actions do not belong to the debtor, and therefore, cannot be retained pursuant to § 1123(b)(3) of the Code. Furthermore, they argue that avoidance actions should not be considered claims for purposes of § 1123 of the Code.

The Herbert Hunt Defendants rely primarily upon two cases to support their argument that Plaintiffs lack standing to bring the actions: *Foster Dev. Corp. v. Morning Treat Coffee Co., Inc. (In re Morning Treat Coffee Co., Inc.),* 77 B.R. 62 (Bankr.M.D.La.1987) and *Texas General Petroleum Corp. v. Evans (In re Texas General Petroleum Corp.),* 58 B.R. 357 (Bankr.S.D.Tex.1986). In *In re Morning Treat Coffee,* the court held that the right to avoid a transfer under § 544(b) could not be sold since it was not property of the estate. *In re Morning Treat Coffee,* 77 B.R. at 65. The court in *In re Texas General Petroleum* found that an assignee could not pursue a debtor's lien avoidance claims absent a showing that such prosecution would benefit all creditors. *In re Texas General Petroleum,* 58 B.R. at 358.

This Court does not consider either of the cases as persuasive authority for the Herbert Hunt Defendants' arguments. The court in *In re Morning Treat Coffee* was faced solely with the issue of whether the right to bring avoidance actions could be sold, not retained. Although the court prohibits the sale of avoidance actions, the case supports the proposition that such actions may be retained. The court noted that:

> If Bankruptcy Code § 1123(b)(3) applies, it provides that a plan may provide for the *retention* and enforcement of any claim or interest belonging to the debtor or to the estate; that provision also states that the plan may provide for

the *retention* and enforcement of such a claim by a representative of the estate appointed for such purpose. It does *not* provide for the *sale* of such a right.

*In re Morning Treat Coffee,* 77 B.R. at 65. In the case at hand, the Joint Plans specifically provide for the preservation of the causes of action for the benefit of the Debtors' Estates, not a sale thereof.

The other case cited by the Herbert Hunt Defendants is the 1986 decision *In re Texas General Petroleum* wherein the court held that:

> [Assignee], while a party in interest as a result of the [Debtor's] assignment, is not the debtor-in-possession, the trustee, or even the representative of the creditor's committee, as those terms are defined in the Code ... neither a trustee in bankruptcy nor a debtor-in-possession can assign, sell, or otherwise transfer, the right to maintain a suit to avoid a preference.. If a trustee or a debtor-in-possession makes such an assignment, the assignment is of no effect.

*In re Texas General Petroleum,* 58 B.R. at 358.

That opinion is distinguishable for two reasons. First, the court noted that in the absence of a showing that the avoidance of any liens would benefit the estate or the creditors, the assignee was precluded from asserting its claims. *Id.* In the case at hand, the avoidance actions are being pursued for the benefit of the creditors.[5] More importantly, the same court has more recently made a ruling contrary to the 1986 decision. In a 1990 opinion, the same court held that the avoidance actions "fell to" the creditors of the estate, and thus, the Liquidating Trustee had standing to assert a § 548 action pursuant to the confirmed plan and order of confirmation. *Liquidating Trust of Texas General Petroleum Corp. v. McFarland & Tondre (In re Texas General Petroleum Corp.),* 122 B.R. 306 (Bankr.S.D.Tex.1990).

Section 1123(b)(3) provides in pertinent part as follows:

(b) Subject to subsection (a) of this section, a plan may—

(3) provide for—

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

11 U.S.C. § 1123(b)(3).

This Court holds that § 1123(b)(3)(B) provides for the retention of avoidance actions pursuant to the provisions of a confirmed plan, and that such actions may be prosecuted by a representative of the estate. "Under § 1123(b)(3)(B), a party who is neither the debtor nor the trustee but who seeks to enforce a claim must establish two elements: (1) that it has been appointed; (2) that it is a representative of the estate." *Temex Energy, Inc. v. Hastie and Kirschner (In re Amarex, Inc.),* 96 B.R. 330, 334 (W.D.Okla.1989).

Plaintiffs clearly satisfy the first element. Pate was appointed Independent Trustee by the Order Appointing R. Carter Pate as Independent Trustee of the NBH Liquidating Trust entered on January 8, 1990. Turoff was appointed Independent Trustee by the Order Appointing Steven S. Turoff as Independent Trustee of the WHH Liquidating Trust entered on January 12, 1990. Furthermore, the Joint Plans clearly contemplate the appointment of Independent Trustees in § 5.2 (detailing the Liquidating Trust arrangement) and § 15.9.

As to the second element, the Court holds that Plaintiffs as Independent Trustees are "representative of the estate" for purposes of § 1123(b)(3)(B). As the Oklahoma District Court noted in *Amarex,* most courts have adopted a case-by-case approach to determine whether a party is a "representative of the estate", primarily focusing upon whether a successful recovery would benefit the estate creditors. *Id.* Section 15.9 of the Joint Plans specifically provides that the claims and causes of action are preserved for the benefit of the Debtors' estates, and that any proceeds generated from the prosecution or settlement of such claims or causes of action

---

**5.** The plain language of the Joint Plans provides that any recovery is to "be added to the Trust

Assets for distribution to Creditor Claims." (Joint Plans § 15.9.)

shall be added to the Trust Assets for distribution to Creditor Claims. Numerous other courts have determined that parties akin to Plaintiffs' status in the case at hand have standing to bring avoidance actions as representatives of the estate. *Citicorp Acceptance Co., Inc. v. Robison (In re Sweetwater)*, 884 F.2d 1323 (10th Cir.1989); *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177, 1180 n. 1 (11th Cir.1987); *Kroh Bros. Dev. Co. v. United Missouri Bank of Kansas City, (In re Kroh Bros. Dev. Co.)*, 100 B.R. 487 (Bankr. W.D.Mo.1989), *appeal denied*, 101 B.R. 1000 (1989); *Southern Commodity Corp. Official Liquidating Committee v. El Campo Rice Milling Co., Inc. (In re Southern Commodity Corp.)*, 78 B.R. 626 (Bankr.S.D.Fla.1987).

The Court concludes that the claims and causes of action were retained for Plaintiffs to pursue as representatives of the Estates for the benefit of the Estates; the claims were neither invalidly assigned nor sold to a third party for its own benefit. Therefore, Plaintiffs have standing pursuant to § 1123(b)(3)(B) of the Code to bring the Complaints.

## C. *Statute of Limitations—Section 546(a)(1)*

### 1. Applicability of Section 546(a)(1) to Debtors in Possession

The Herbert Hunt Defendants argue that all claims brought by Plaintiffs are barred by the limitations period prescribed by § 546(a)(1) of the Code. Section 546(a) provides as follows:

> (a) An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—

> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302 or 1202 of this title; or

> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

The Herbert Hunt Defendants contend that the Complaints should be barred since they were not filed within two years of the filing of Debtors' Chapter 11 petitions. They rely primarily on the recent Tenth Circuit decision *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990), which held that § 546(a)(1) applies to actions brought by a debtor-in-possession and that the two year limitations period begins to run from the petition date.[6] The Herbert Hunt Defendants assert that the *Zilkha* holding applies to this Adversary Proceeding since Plaintiffs derived their right to maintain the avoidance actions from the Debtors–in–Possession.

The Huddleston Defendants also argue that Plaintiffs' claims are barred by § 546(a), but they "acknowledge that if the instant bankruptcy estates had a trustee appointed under one of the sections enumerated in Section 546, then the applicable limitations period would end two years after the appointment of that trustee." (Defendants' Reply to Plaintiffs' Brief in Opposition to Huddleston Defendants' Motion to Dismiss/Motion for Partial Summary Judgment at 6.)

Plaintiffs, however, assert that the two year limitations period of § 546(a)(1) does not prevent them from asserting their causes of action for two reasons. First, they argue that *Zilkha* and its progeny were wrongly decided. Plaintiffs contend that § 546(a)(1) by its clear language applies only to trustees appointed pursuant to any of the sections specifically enumerated in § 546(a)(1), and thus, not debtors-in-possession. Therefore, they argue the *Zilkha* line of cases are incorrect in applying § 546(a)(1) as a limitation to avoidance actions brought by debtors-in-possession.

Plaintiffs then argue that even if *Zilkha* were correctly decided, it would not apply to this Adversary Proceeding. They point

---

**6.** The Herbert Hunt Defendants also cite the following cases for support: *Sparmal Enter., Inc. v. Moffit Realty Corp.*, 126 B.R. 559 (S.D.Ind.1991); *Lill v. Bricker (In re Lill)*, 116 B.R. 543 (Bankr.N.D.Ohio 1990); *Construction Management Serv., Inc. v. Manufacturers Hanover Trust Co. (In re Coastal Group, Inc.)*, 125 B.R. 730 (Bankr.D.Del.1991).

out that they are not debtors in possession, but instead are Liquidating Trustees "appointed" pursuant to the Joint Plans and the Liquidating Trust Agreements. Therefore, Plaintiffs contend that they should be treated in one of two ways: (1) as court appointed trustees with two years from the date of their "appointment" to bring avoidance actions, or (2) they are not governed by § 546(a)(1) at all, with the only limitation applying to Plaintiffs being § 546(a)(2) requiring that the filing of any avoidance actions must be prior to the close or dismissal of a case.

### (a) The *Zilkha* Analysis

The decisions relied upon by the Defendants generally begin with a determination that § 546(a) is ambiguous, thereby allowing the courts to construe the statute.[7] Then, the courts generally follow a two-part analysis. First, the courts equate a debtor-in-possession with a Chapter 11 trustee by citing § 1107(a) of the Code.[8] In finding that § 546(a)(1) applies to debtors in possession, the Delaware bankruptcy court emphasized that the debtor-in-possession is subject to any limitations applicable to a Chapter 11 trustee. *In re Coastal Group, Inc.*, 125 B.R. at 732.

Secondly, the courts address the issue of whether a debtor-in-possession is subject to the same two year statute of limitations as

an appointed trustee. The Tenth Circuit stated:

> We do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. Because of the virtual identity of function between a trustee and a debtor in possession, there would be no reason to create a different limitation period for the filing of actions by the two fiduciaries. Moreover, when the balance of § 546 is considered, it is even more apparent that Congress intended for the word "trustee" to apply to a debtor in possession, for every reference to actions brought by a trustee contained in § 546 obviously applies to actions brought by a debtor in possession. A contrary analysis would deprive § 546 of significance in the majority of recovery actions filed in Chapter 11 cases.
>
> Consequently, we construe § 546(a)(1) to apply to actions filed by a debtor in possession, and we believe the period of limitation begins to run from the date of the filing of a petition for reorganization under chapter 11. We reach that conclusion because the debtor becomes a debtor in possession on that date.

*Zilkha*, 920 F.2d at 1524. Although it has been followed by a few courts, *Zilkha* is contrary to the majority of cases that have addressed § 546(a)(1).[9] This Court declines

---

7. The Indiana District Court probably gives the best analysis for the holding that § 546(a)(1) is ambiguous and applies to debtors in possession in the *Sparmal Enter., Inc.* case. The District Court stated:

> [t]he ambiguity in the statute arises from the fact that § 546(a) declares that it applies to all actions brought under § 547, but then in § 546(a)(1) the "appointment of a trustee" language seemingly precludes the situation where the Bankruptcy Code, under § 1107(a), has granted trustee status to a debtor in possession to carry out a § 547 preference action. Thus, whether § 546 applies to all § 547 actions, as implied by § 546(a), or only those brought by an appointed trustee, as applied by § 546(a)(1), is ambiguous.

*Sparmal Enter., Inc.*, 126 B.R. at 561.

8. Section 1107(a) of the Code provides:

> Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court pre-

scribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

9. *One Mktg. Co., Inc. v. Addington & Assoc. (In re One Mktg. Co., Inc.)*, 17 B.R. 738 (Bankr. S.D.Tex.1982); *Edleman v. Gleason (In re Silver Mill Frozen Foods, Inc.)*, 23 B.R. 179 (Bankr. W.D.Mich.1982); *Mahoney, Trocki & Assoc., Inc. v. Kunzman (In re Mahoney, Trocki & Assoc., Inc.)*, 111 B.R. 914 (Bankr.S.D.Cal.1990); *Alithochrome Corp. v. East Coast Finishing Sales Corp. (In re Alithochrome Corp.)*, 53 B.R. 906 (Bankr. S.D.N.Y.1985); *Boatman v. E.J. Davis Co. (In re Choice Vend, Inc.)*, 49 B.R. 719 (Bankr.D.Conn. 1985). Furthermore, in the most recent decision examining § 546(a) that this Court is aware of, the Connecticut bankruptcy court rejected

to follow the *Zilkha* analysis for the reasons set out below.

#### (b) The Statute is Unambiguous

■ Initially, this Court finds the wording of § 546(a)(1) unambiguous. If it had intended for the word "trustee" to apply to a debtor-in-possession as the Tenth Circuit Court of Appeals believed, Congress could have made it clear by including the words "debtor-in-possession" or referring to the "date of the petition".[10] Instead, Congress made it perfectly clear that § 546(a)(1) applies only to trustees appointed under specifically enumerated sections of the Code.[11] Where the statute's language is unambiguous, the inquiry into the meaning of the statute should begin and end with its language, and the Court's sole function is to enforce it according to its terms. *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), *citing Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).[12] This Court agrees with the district court in *Korvettes, Inc. v. Sanyo Elec., Inc. (In re Korvettes, Inc.)*, 67 B.R. 730 (S.D.N.Y.1986) that:

> [a]t the time Congress amended the Bankruptcy Code in 1984, several cases had interpreted subsection 546(a)(1)'s two year time bar as starting to run only after a trustee is appointed, and as inapplicable to debtors in possession. Congress' failure to amend subsection 546(a)(1) to include debtors in possession supports the view that that subsection does not apply to them. *See Air Transport Association of America v. PATCO*, 667 F.2d 316, 321 (2d Cir.1981) (court can "presume that Congress is aware of set-

tled judicial constructions of existing law ... and that it intends to retain those remedies that it has left in place"), cited in *In re Choice Vend, supra*, 49 B.R. [719] at 721 [Bankr.D.Conn.1985].

*In re Korvettes*, 67 B.R. at 733.

#### (c) The Fifth Circuit's Position

The holding in the *Zilkha* opinion is also inconsistent with the Fifth Circuit Court of Appeals' ruling that "the limitations period under section 546(a) should commence consistent with the appointment of the trustee through a written order." *MortgageAmerica Corp. v. American Fed. Sav. & Loan (In re MortgageAmerica Corp.)*, 831 F.2d 97, 98 (5th Cir.1987) (per curiam); *see also Chapman v. Cardell Cabinets, Inc. (In re Nash Phillips/Copus–Houston, Inc.)*, 114 B.R. 466 (Bankr.W.D.Tex.1990). Although the issue before the court was whether the two year statute of limitations period commenced on the date the bankruptcy court orally appointed a trustee or upon the court's entry of a written order of appointment, either date was well past the petition date. *Id.*

#### (d) Debtor–in–Possession is not the Equivalent of a Trustee

■ This Court also disagrees with the Tenth Circuit Court of Appeals' view that § 546(a)(1) should apply to debtors in possession as well as trustees because of the "virtual identity of function between a trustee and a debtor-in-possession." *Zilkha*, 920 F.2d at 1524. Although many of the powers and duties of a trustee are granted to or imposed upon a debtor-in-

---

*Zilkha* and its progeny. *Caplan v. United States Brass & Copper Co. (In re Century Brass Products, Inc.)*, 127 B.R. 720 (Bankr.D.Conn.1991).

**10.** Congress could have even made reference to § 1107 of the Code if it had intended § 546(a)(1) to apply to debtors in possession instead of omitting any reference whatsoever to debtors in possession.

**11.** If § 546(a)(1) simply read "two years after the appointment of a trustee" and left out the specific Code sections Congress chose to include, the Court might be more inclined to accept the analysis in *Zilkha* that the statute is

ambiguous and that Congress' use of "trustee" was meant to apply to debtors in possession as well as appointed trustees. However, the inclusion of the enumerated sections makes it clear that Congress intended § 546(a)(1) to apply only to trustees appointed under one of those sections, and not to debtors in possession.

**12.** It is well settled that "when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words." *United States v. Holroyd*, 732 F.2d 1122, 1125 (2d Cir.1984); *see also Caruth v. United States*, 566 F.2d 901, 905 (5th Cir.1978).

possession, they are distinct entities, often operating under different agendas. A debtor-in-possession is concerned primarily with rehabilitating the company by developing a confirmable plan of reorganization. The debtor-in-possession negotiates with the creditors of the estate regarding the treatment they will receive under the plan, knowing that ultimately it is the creditors who vote to accept or reject the plan.[13] The debtor-in-possession may decide during this negotiation period to compromise, settle, or abandon any avoidance actions, or may simply let potential claims lie until after a plan is confirmed.

A Chapter 11 trustee, however, is primarily interested in obtaining the maximum return possible for the estate's creditors. In order to achieve this result, a trustee generally will be more diligent in pursuing any possible avoidance actions. Even though both a debtor-in-possession and a trustee have fiduciary responsibilities to the estate, a trustee is more likely to pursue voidable transfers. Furthermore, while a trustee is specifically required to investigate the affairs of the debtor and file a statement of the results of such investigation, including any causes of action available to the estate, a debtor-in-possession is not required to perform such duties.[14] Therefore, the Tenth Circuit's conclusion that a debtor-in-possession is the "functional equivalent" of an appointed trustee is theoretically correct, but not in synch with real life.

Furthermore, a debtor-in-possession has less incentive to bring an avoidance action, since the debtor is the one who made the questioned transfer in the first place. *Perlstein v. Saltzstein (In re AOV Indus., Inc.),* 62 B.R. 968, 974 (Bankr.D.D.C.1986). This rationale clearly applies in this case. It is doubtful that the Debtors in Possession would have any incentive to bring any of the claims alleged in the Complaints if the Debtors made the alleged transfers to their relatives and affiliates. Therefore, sound policy justifies Congress having provided trustees two years from the date of appointment to bring any avoidance actions, while not limiting all avoidance actions to two years from the petition date.[15] This Court concludes that the *Zilkha* line of cases are incorrect in holding that the two year limitations period in § 546(a)(1) applies to debtors in possession.

2. Applicability of Section 546(a) to Plaintiffs as Independent Trustees

██ The question remaining before the Court then is the applicability of § 546(a) to Plaintiffs as Independent Trustees. Plaintiffs initially argue that they should be treated as court appointed trustees, and therefore, the two year period of limitations should begin to run from the date of

13. It is not difficult to see how a debtor in possession might not desire to bring an avoidance action against the creditors with whom he is negotiating with, and dependent upon, for the survival of the company.

14. Section 1107(a) of the Code provides that a debtor in possession shall perform all the functions and duties of a trustee "except the duties specified in sections 1106(a)(2), (3), and (4)" of the Code. 11 U.S.C. § 1107(a). Section 1106 provides in pertinent part as follows:

(a) A trustee shall—
    (2) if the debtor has not done so, file the list, schedule, and statement required under section 521(1) of this title;
    (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—
    (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and
    (B) transmit a copy or a summary of any such statement to any creditor's committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates.
11 U.S.C. § 1106.

15. Furthermore, several courts have held that *each* trustee appointed under the enumerated provisions of § 546(a) has two years within which to commence avoidance actions. *Smith v. Moody (In re Moody),* 77 B.R. 566, 573–74 (S.D.Tex.1987), *aff'd,* 862 F.2d 1194 (5th Cir. 1989); *Stuart v. Pingree (In re AFCO Dev. Corp.),* 65 B.R. 781, 782–83 (Bankr.D.Utah 1986).

their "appointment". The only authority cited by Plaintiffs to support their position is *In re AOV Indus.*, wherein the bankruptcy court held that a disbursing agent appointed pursuant to a court approved plan should be treated like a trustee for the purposes of § 546(a) and given two years from his appointment to bring an avoidance action. Alternatively, Plaintiffs argue that if the Court finds that they are not court-appointed trustees, only § 546(a)(2) acts as a limitation on avoidance actions.

The Court rejects Plaintiffs' assertion that they should have two years from the date of their appointment to bring the claims. To hold now that Plaintiffs should be treated as court appointed trustees would be inconsistent with the Court's earlier analysis that § 546(a)(1) is unambiguous. Therefore, since Pate and Turoff are not trustees appointed under section 702, 1104, 1163, 1302, or 1202 of the Code, § 546(a)(1) does not apply to them.

Section 546(a)(2) permits a debtor-in-possession (or other "representative of the estate") to bring an avoidance action until the case is closed or dismissed. One bankruptcy court expressed reservations with such a ruling because the point at which a case is officially "closed" is unclear, thereby creating uncertainty and confusion. *Korvettes, Inc. v. Sanyo Electric Inc. (In re Korvettes, Inc.)*, 42 B.R. 217, 220–21 (Bankr.S.D.N.Y.1984). That bankruptcy court then fashioned its own rule that the appropriate limitations period for avoidance actions should be the longer of confirmation or two years from the reorganization filing date. *Id.* at 222. In reversing the bankruptcy court's decision, the district court stated that "disagreement with a statute's effect does not render its words ambiguous. The wording is perfectly clear.... If the plain meaning of subsection 546(a)(2) has led to unworkable results, the problem must be remedied by Con-

gress, not the courts." *In re Korvettes*, 67 B.R. at 734.

The Court concludes that § 546(a)(2) is the only federal limitations bar to avoidance actions brought by parties other than appointed trustees. *In re Korvettes*, 67 B.R. at 734; *In re One Mktg.*, 17 B.R. at 740; *Steel, Inc. v. Windstein*, 55 B.R. 426, 430 (Bankr.E.D.La.1985). "Congress set the time a case is closed as the bar date, whatever the difficulty.... Courts cannot substitute their own ideas of what might be a wiser provision in place of a clear expression of legislative will." *In re Choice Vend, Inc.*, 49 B.R. at 722. Accordingly, Plaintiffs Complaints were timely filed since the Debtors' respective cases have not been closed or dismissed.

### D. Applicability of State Statutes of Limitations

The Herbert Hunt Defendants contend that any claims asserted by Plaintiffs under § 544 are time barred by the Texas statutes of limitations. They argue that all claims based on transfers of real property which occurred prior to June 11, 1987 are barred by the four year statute of limitations period prescribed by the applicable Texas statute.[16] Tex.Civ.Prac. & Rem. Code Ann. § 16.051 (Vernon 1986). They further contend that any claims based on transfers of real property prior to September 21, 1984 are necessarily barred because the applicable limitations period expired prior to the filing of Debtors' Chapter 11 petitions.

With respect to transfers of personal property, the Herbert Hunt Defendants argue that the applicable statute of limitations is two years.[17] They contend that any claims based on transfers of personal property occurring prior to September 1, 1987 are barred.[18] They also assert that any claims based on transfers of personal property prior to September 21, 1986 are necessarily barred because the applicable

---

**16.** As noted above, the Complaints were filed on June 11, 1991.

**17.** They cite *Bonhiver v. Affiliated Companies of America*, 447 F.2d 108, 112 (5th Cir.1971) to support their contention.

**18.** They note that the limitations period applicable to transfers of personal property is four years for all conveyances subsequent to September 1, 1987. Tex.Bus. & Com.Code Ann. § 24.-010 (Vernon 1986).

limitations period expired prior to the filing of Debtors' Chapter 11 petitions.

The Huddleston Defendants raise the affirmative defense of the applicable state limitations periods with respect to Plaintiffs' fraudulent transfer claims as to the 1985–86 Gifts. They contend that because the applicable four year statute of limitations would have run at the end of 1990, such claims should be dismissed since the Complaints were not brought until June 11, 1991.

Plaintiffs respond that state statutes of limitations do not apply to them at all. They argue that since state statutes of limitations are inoperable as to the United States, they are likewise ineffective to bar their action. Plaintiffs emphasize that the Internal Revenue Service (the "IRS") is the largest creditor of the Debtors, and that Plaintiffs stand in the shoes of the IRS in this adversary proceeding. Plaintiffs complete their argument by noting that if a transfer is avoidable at all by any creditor, it is avoidable in full for all creditors.

Plaintiffs then argue that even if state statutes of limitations do apply, the claims were timely filed for several reasons. First, they contest the Herbert Hunt Defendants' assertion that the applicable limitations period for personal property transfers was two years prior to September 1, 1987. They argue that the language in *Bonhiver* relied upon by the Herbert Hunt Defendants is merely *dicta*, and that Texas law was clear that a four year statute of limitations period applied to conveyances of personal property.[19] Second, they argue that their claims are not barred because the applicable limitations period did not begin to run until Plaintiffs discovered, or should have discovered, the fraudulent transfers. Thus, they contend that the claims could not have accrued prior to January 1990 when Plaintiffs were appointed

as Liquidating Trustees. Plaintiffs also argue that § 546(a) extends the time for filing avoidance actions as long as the state statute of limitations had not run as of the date of the bankruptcy petition.[20] They argue the federal limitations period provided by § 546(a) would govern, and thus, all claims that were not time barred as of the date of petition were timely brought.

■ When analyzing the timeliness of a § 544 avoidance action, the applicable state limitations periods are only relevant in determining whether the claim was time barred prior to the bankruptcy filing. If the fraudulent conveyance action was not time barred as of the petition date, then § 546(a) supersedes the state statute of limitations period since it provides a specific time within which a § 544 claim can be brought. Therefore, since the Court has ruled that § 546(a)(2) applies to this proceeding, the Court need only determine whether the claims were "still alive" as of the petition date.

1. Plaintiffs Stand in the Shoes of an Unsecured Creditor, the Internal Revenue Service, and Thus, are not Barred by the State Statutes of Limitations

■ Plaintiffs are asserting avoidance actions on behalf of the estate for the benefit of all creditors (including the IRS). *See American Nat'l. Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir.1983) (the trustee in an avoidance action acts for the benefit of all creditors). It is well settled that the United States is not bound by state statutes of limitation. *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). Furthermore, the government utilizes state law in an action to set aside a fraudulent conveyance.[21] Therefore, the question is

---

**19.** Plaintiffs cite *Hoerster v. Wilke,* 138 Tex. 263, 158 S.W.2d 288, 289–90 (1942).

**20.** Plaintiffs cite the following cases for support: *Rosania v. Haligas (In re Dry Wall Supply, Inc.),* 111 B.R. 933, 936 (D.Colo.1990); *In re Mahoney, Trocki & Assoc., Inc.,* 111 B.R. 914; *In re Revco D.S., Inc.,* 118 B.R. 468, 498 (Bankr.N.D.Ohio 1990) (Appendix—Examiners' Report) (the

weight of authority supports the proposition that as long as the statute of limitations has not run as of the date of the filing of the petition, section 546(a) acts to extend the time to bring the cause of action).

**21.** "Although the Government properly pursued its claim in federal district court, 'until Congress speaks to the contrary, the existence and extent

whether a trustee, or similar party such as Plaintiffs as representatives of the estates in this proceeding, who acquires the status of an actual unsecured creditor for purposes of § 544(b) is immune from state statutes of limitations when utilizing the status of the United States as an unsecured creditor under § 544(b).

■ Section 544(b) of the Code creates a power of avoidance in a trustee to avoid any transfer that an actual unsecured creditor of the debtor as of the date of the petition could have avoided. For purposes of the dismissal motions, the Court must accept as true Plaintiffs' allegations in the Complaints that the United States of America was an actual unsecured creditor of the Debtors as of the petition date. *Kaiser Aluminum*, 677 F.2d at 1050. Furthermore, § 544(b) permits a trustee to "stand in the shoes of a creditor" to assert any state law claims that a creditor may have.[22] *Kupetz v. Wolf*, 845 F.2d 842, 845 (9th Cir.1988). Therefore, this Court concludes that Plaintiffs are not barred by the applicable state statutes of limitations since they acquired the status of the United States pursuant to § 544(b) of the Code. *United States v. Gleneagles Investment Co., Inc.*, 565 F.Supp. 556, 583 (M.D.Pa. 1983), *aff'd. sub. nom.*, *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir.1986), *cert. denied, McClellan Realty Co. v. United States*, 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987) (trustee's claim asserted on behalf of the United States was not barred by the state statute of limitations since the trustee was empowered to assert the rights of the United States as a creditor). Finally, if a transfer is avoidable at all by any creditor, it is avoidable in full for all creditors. *Abramson v. Boedeker*, 379 F.2d 741, 748 n. 16 (5th Cir.1967), *cert. denied*, 389 U.S. 1006, 88 S.Ct. 563, 19 L.Ed.2d 602 (1967).

## 2. Discovery Rule Presents Questions of Fact

■ Irrespective of whether Plaintiffs are immune from the applicable state statutes of limitations, the Court will not grant the Herbert Hunt Defendants' facial Motion to Dismiss. Texas courts have repeatedly held that although a four year statute of limitations applies to suits filed to set aside fraudulent conveyances, the limitations period does not begin to run until the fraud is, or should have been, discovered by the creditor through the exercise of reasonable diligence. *Hoerster v. Wilke*, 138 Tex. 263, 158 S.W.2d 288 (1942); *Eckert v. Wendel*, 120 Tex. 618, 40 S.W.2d 796 (1931). These issues involve factual inquiries that are not properly presented in a motion to dismiss, and therefore, the relief requested on such issues by the present motions shall be denied.

## 3. The Complaints Seek Relief from the Trustee of the Insurance Trust, not the Minor Beneficiaries

■ The Huddleston Defendants contend that Plaintiffs actions against the minor Huddleston Grandchildren for recovery of the allegedly fraudulent "Insurance Trust" transfer are barred by the two year statute of limitations applying to causes of action against a minor. Tex.Bus. & Com. Code Ann. § 24.010(b) (Vernon 1987). Plaintiffs respond to the Huddleston Defendants' argument by emphasizing that they are seeking recovery from the Insurance Trust trustee, not the Huddleston grandchildren. They contend that the grandchildren were named as parties only because of the requirement of Texas trust law on naming trust beneficiaries as parties to litigation against a trust. *See*

---

of liability [in such cases] should be determined by state law.' *Commissioner v. Stern*, 357 U.S. 39, 45, 78 S.Ct. 1047, 1051, 2 L.Ed.2d 1126, 1131 (1958). Consequently, the United States proceeded under the applicable [state] fraud statute [footnote omitted]." *United States v. Fernon*, 640 F.2d 609, 611 (5th Cir. Unit B March 1981).

**22.** Indeed, on the same page they argue against Plaintiffs' ability to assert the rights of the IRS as to state statute of limitations, the Herbert Hunt Defendants argue against the tolling of the statutes of limitations by stating, "under 11 U.S.C. § 544(b), [Plaintiffs] must stand in the shoes of an actual, unsecured creditor". (Reply to Brief in Opposition to Herbert Hunt Defendants' Motion to Dismiss at 19.)

*Smith v. Wayman,* 148 Tex. 318, 224 S.W.2d 211 (1949).

Since the Insurance Trust transfer occurred in August of 1988, just one month prior to the petition date, the Huddleston Defendants' argument that the claims against the minor grandchildren are barred must fail as a matter of law. Furthermore, the Court finds that the trustee for the minors has been named as the real party defendant. No recovery is sought directly from the minors, and therefore, the limitations applicable to minors is inoperative in this case.

### E. Resolution of remaining grounds for dismissal

#### 1. The Sufficiency of the Allegations of Fraud as Required by Federal Rule of Civil Procedure 9(b)

■■■■■ To satisfy Federal Rule of Civil Procedure 9(b), made applicable to this proceeding by Bankruptcy Rule 7009, a complaint need only apprise the defendants of the time, place, and nature of the fraudulent conduct and their relationship thereto. *Steiner v. Southmark Corp.,* 734 F.Supp. 269, 273 (N.D.Tex.1990). The Complaints have set forth the basic framework to support their fraudulent conveyance claims under sections 544 and 548 of the Code, and therefore, Plaintiffs have pleaded with sufficient particularity to satisfy the requirements of Rule 9(b). *Hassett v. Weissman (In re O.P.M. Leasing Serv., Inc.),* 35 B.R. 854, 862 (Bankr.S.D.N.Y.1983) (noting that the liberal discovery rules militate against dismissal of a complaint once the basic framework of the fraud has been outlined). The Court also emphasizes that a less stringent standard prevails in a bankruptcy proceeding involving fraudulent transfer claims brought by a trustee since the third party trustee is generally pleading fraud on second-hand information. *Id.*

#### 2. Section 550 Issues Present Questions of Fact

Plaintiffs claim that from March through September of 1988, the Debtors contributed in excess of $3.5 million to the Yemen Exploration Petroleum Corporation Co., Ltd. ("YEPCO"), an offshore corporation. A companion corporation, Oilfield Technology Services ("OTS"), created in July 1987 to provide support to YEPCO, allegedly received in excess of $4.6 million from the Debtors during the year prior to bankruptcy. Plaintiffs have alleged that these contributions were designed for the benefit of the Lydia Herbert–Hunt Trust and the Lydia Hunt–Bunker Trust which received 100 percent of the common stock of YEPCO for a $200,000 contribution.

■■■■ The Huddleston Defendants argue that Plaintiffs have failed to allege a recoverable claim with regards to the YEPCO/OTS transaction by interpretation of § 550 of the Code. They contend that § 550 determines from whom a plaintiff can recover on a § 548 cause of action, and that Plaintiffs cannot recover anything from them pursuant to § 550(a)(1). The § 550 issues asserted by the Huddleston Defendants contain issues that are more appropriate for summary judgment involving an analysis of possible questions of fact. Since the purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint, the Court denies the Huddleston Defendants' Motion to Dismiss with regard to the § 550 issue without prejudice to the refiling of same as a Motion for Summary Judgment.[23]

#### 3. Pate's Standing as a "Real Party in Interest"

The Herbert Hunt Defendants argue that Pate is not a real party in interest, and therefore, is not entitled to assert claims against them. Fed.R.Civ.P. 17(a). They note that the Complaints indicate that Pate, as Independent Trustee of the NBHLT and

---

**23.** While not stated by counsel at the hearing when the Court made an oral ruling on the dismissal motion with regards to the § 550 issue, the Court notes that the Huddleston Defendants filed a Request to Consider Motion to Dismiss for Failure to State a Claim as Motion for Partial Summary Judgment on August 7, 1991. Presentation of the Request is insufficient inasmuch as the motion and evidence submitted are conclusory with only a two-page, self-serving affidavit in support thereof.

 

Steven S. Turoff, as Independent Trustee of the WHHLT, are joined as Plaintiffs in this adversary, and that Plaintiffs seek what appears to be joint relief for nine defined transactions.

However, the Herbert Hunt Defendants assert that they are not alleged to have been involved in the transactions referred to as "Bluegrass Farms" or the "Insurance Trust", nor is any allegation made that Nelson Bunker Hunt made any transfer to or for the benefit of any of the Herbert Hunt Defendants in connection with the transactions styled "Les Lacs", "3Ps/Starker Trust", "1987–88 Gifts" or the "1985–86 Gifts". Consequently, they contend that Pate has failed to state a claim against any of the Herbert Hunt Defendants with respect to the above specified transactions, and therefore, any claims asserted by Pate involving such transactions should be dismissed.[24]

While Pate acknowledges that he never made a claim against the Herbert Hunt Defendants, with respect to the nine transactions, he argues that Herbert Hunt Defendants were allegedly involved in several of the transactions of which he complains, and asserts that such claims should not be summarily dismissed because of the Herbert Hunt Defendants' broad assertion that he is not a real party in interest. Pate argues that all the transactions are necessarily related as they are part of the "pattern of activity" evidencing the Debtors' alleged fraudulent intent to delay, hinder or defraud creditors.

Because Pate acknowledges that he does not make a claim against the Herbert Hunt Defendants with respect to the nine transactions, the Court will treat same as a judicial admission and dismiss the Herbert Hunt Defendants from those counts, without prejudice to Pate's amending the Complaint to define the thrust of his actions against what parties. Pate and Turoff have stated a viable cause against Carlsbad, only as to certain transactions, and

otherwise have not asserted a claim. With respect to those matters in which Carlsbad had no alleged involvement, such claims against Carlsbad should be dismissed, or amendments required whereby each Plaintiff spells out his allegations as to each set of Defendants to clearly seek a recovery based on a clear set of allegations and proof. The Court will, at a hearing, review the need for severance of these Adversary Proceedings for ultimate trial.

## VI.  CONCLUSION

The Motions to Dismiss will be DENIED as discussed. Amendment of the Complaints will be required as stated.

---

24. Carlsbad also argues that it is not named as a participant in certain alleged transactions, and therefore, such claims cannot proceed against them.